
"UNDER SEAL"

**FILED**
IN COURT
CHARLOTTE, N. C.

SEP 1 3 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re:<br><br>NICHOLAS DIBRUNO AND WENDY DIBRUNO,<br><br>Debtors. | Case No.<br>Bankruptcy Case Number 05-33005<br>Chapter 7 |
| In re:<br><br>JOSEPH A. DIBRUNO, JR.,<br><br>Debtor. | Case No.<br>Bankruptcy Case Number 05-33006<br>Chapter 7 |
| In re:<br><br>JOSEPH A. DIBRUNO, SR.,<br><br>Debtor. | Case No.<br>Bankruptcy Case Number 05-33007<br>Chapter 7 |
| In re:<br><br>LELA L. DIBRUNO,<br><br>Debtor. | Case No.<br>Bankruptcy Case Number 05-33712<br>Chapter 7 |

## TEMPORARY RESTRAINING ORDER

This matter was heard on September 13, 2005 on the Trustee's Ex Parte Motion For Order Directing Debtors To Surrender Property With Request For Temporary Restraining Order And Injunction, the District Court having withdrawn the reference pursuant to 28 U.S.C. § 157(d) to the Nicholas DiBruno & Wendy DiBruno, the Joseph A. DiBruno, Jr. and the Joseph W. DiBruno, Sr. cases by separate order entered on or about September 12, 2005, and the Lela L. DiBruno case by order of September 13, 2005. The Court has reviewed the Trustee's motion and

accompanying affidavits and finds and concludes that the ex parte relief requested should be granted. The court further finds and concludes as follows:

## INTRODUCTION

1. The Debtors, except for Lela DiBruno, filed their voluntary petitions pursuant to chapter 7 of the United States Bankruptcy Code on July 26, 2005. The Trustee is the duly appointed chapter 7 trustee in each of these Debtors' cases.

2. Creditors Locke Holland and Cynthia Dimmette filed an involuntary chapter 7 petition against Lela DiBruno on September 9, 2005. No trustee has been appointed and no order for relief has been entered.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Nicholas DiBruno ("Nick DiBruno"), one of the Debtors, is a thirty-three year-old male. He currently resides with his wife, Wendy, also a debtor, and their child at 184 Reese Wilson Road in Belmont, Gaston County, North Carolina, 28012.

5. Joseph A. DiBruno, Jr. ("DiBruno, Jr."), one of the Debtors, is a thirty-six year-old unmarried male. He currently resides at one or more locations: (a) with his father at 7319 Wilkinson Boulevard, Belmont, Gaston County, North Carolina 28012; (b) with his mother at 103 Poplar Street, Belmont, Gaston County, North Carolina 28012; or (c) 107 Westwood Drive, Belmont, Gaston County, North Carolina 28012, a house owned by his mother but otherwise unoccupied.

6.  Joseph A. DiBruno, Sr. ("DiBruno, Sr."), one of the Debtors, is a seventy-one year-old male and the father of DiBruno, Jr. and Nick DiBruno. DiBruno, Sr. currently resides at 7319 Wilkinson Boulevard, Belmont, Gaston County, North Carolina 28012.

7.  Lela DiBruno ("Lela DiBruno") is the former wife of DiBruno, Sr. and the mother of Nick DiBruno and DiBruno, Jr. Until recently, she maintained the family residence at 107 Westwood Drive, Belmont, Gaston County, North Carolina 28012, but currently resides with her sister, Mary "Punk" Smiley, at a rental property located at 103 Poplar Street in Belmont.

8.  In a 2004 civil proceeding in the United States District Court for the Southern District of Indiana brought by Kenneth David Aronoff against DiBruno, Jr., DiBruno, Sr., Nick DiBruno, Lela DiBruno, and others (case 04-CV-1126), on December 20, 2004, the Honorable John Daniel Tinder made the following statement:

> I think it's clear from the showing made on the papers and in the testimony provided, the exhibits introduced today that the four DiBrunos through a series of odd familial and business arrangements operate a continuing series of shell games that are constantly evolving; and as one scheme plays out, funds are shifted into another and another, and so on, and that they work as an integrated team with different individuals playing the front person on different matters and Lela often controlling the banking records. And there is troubling evidence that would indicate a spoliation of records that would be vital in response to an earlier order issued by this Court, the intentional destruction of things and efforts being made to evade the requirements imposed by this court on Joseph A. DiBruno, Jr. . . . The inadequacy of the remedy at law is shown by the remarkably rapid rate at which assets are dissipated and the stunningly high end of the scale at which the DiBrunos live, . . . No judgment issued even a month from today would be collectable given the remarkable rate at dissipation of assets that the DiBrunos are achieving.

Exhibit A at 154-56. A full copy of the transcript from the Southern District of Indiana is attached to the motion as Exhibit A.

3

9. As shown by the affidavits of Ron Guerette and Jeff Baker, attached to the motion as Exhibits B and C, respectively, one or more of the debtors, including specifically DiBruno, Jr., on Saturday, September 10, 2005 and Sunday, September 11, 2005, moved substantial property from the house at 107 Westwood Blvd. in Belmont to a warehouse facility called Mini-Warehouses by Cann located at 1671 Upper Armstrong Road in Belmont, NC., using a red pickup truck, a large Budget Rental Truck (approximately 30 feet long) and a separate U-Haul Rental Truck (approximately 18 feet long). It is possible the Debtors have stored additional property at this mini-warehouse.

10. The property moved to the warehouse may be property of one or more of the Debtors and may be property that, subject to the Debtors' exemptions, should be surrendered to the Trustee pursuant to 11 U.S.C. § 521(4). The Trustee believes the quantity of this property is greater than that scheduled by the debtors who filed voluntary petitions and greater than that claimed as exempt by the debtors who have filed voluntary petitions.

11. The Trustee is concerned that, if the court does not protect the Property, it will disappear, resulting in immediate and irreparable injury, loss, or damage to these estates.

**RELIEF REQUESTED AND BASIS FOR REQUESTED RELIEF**

12. The Affidavits demonstrate that good cause exists to support an order by this Court pursuant to 11 U.S.C. § 521(4), Bankruptcy Rule 7054, and Federal Rule 65. Except in extraordinary circumstances, the appropriate rules require notice and a hearing. Nevertheless, because of the Debtors' previous history of hiding, moving or concealing their assets, the Court finds it appropriate to enter a temporary restraining order on this *ex parte* motion without notice or hearing.

13. The Federal Rules of Civil Procedure recognize that extraordinary circumstances may require a party to proceed without notice. In particular, Rule 65(b) of the Fed. R. Civ. P. provides a means of obtaining a temporary restraining order "without written or oral notice to the adverse party or the adverse party's attorney." This procedure requires a showing by affidavit or complaint "that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition" and a certification from the applicant's attorney that notice should not be required. Fed. R. Civ. P. 65(b); *see also Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000) (discussing the availability of a TRO without notice).

14. The Affidavits support a showing that the Debtors' bankruptcy estates are likely to suffer immediate and irreparable loss should the Debtors receive notice of this motion. Further, another court has specifically commented on the Debtors' patterns of behavior and "the remarkably rapid rate at which [their] assets are dissipated." Exhibit A at 156. Thus the first prong of Rule 65(b) is met here. As for the second prong, the Trustee and his attorneys have certified to the Court that the Debtors' past behavior combined with the evidence provided in the Affidavits support the Court's ordering the relief requested by the Trustee on an *ex parte* basis.

15. In addition to the framework provided by Rule 65(b), this Court may find support for *ex parte* action when conditions warrant in decisions by other courts. Under extraordinary circumstances such as these, other courts have found authority to enter *ex parte* orders to aid in the preservation of estate assets. For example, in *Quiros-Lopez v. Unanue-Casel (In re Unanue-Casal)*, 144 B.R. 604 (D.P.R. 1992), the court held that an *ex parte* order attaching the assets of a corporation controlled by the debtor entered without notice was proper because of the extraordinary circumstances at play. 144 B.R. at 613. The debtor in that case had claimed to

have no assets and had fraudulently transferred assets to his wife and two corporations he controlled. *Id.* At the same time, the debtor and his wife had refused to answer questions regarding their ownership interests and had transferred the proceeds of the sale of one property to a Swiss bank account. *Id.* at 607, 613. The court stated that its *ex parte* attachment order was justified so as to ensure that assets would be available should the trustee in that case prevail in the adversary proceeding. *Id.*

16. In another case, a creditor's committee was granted relief on its *ex parte* motion for authority to institute proceedings in Guernsey upon evidence that the debtor's sole shareholder had transferred the debtor's funds there and deliberately destroyed financial documents relative to the transfer. *In re International Administrative Services, Inc.*, 211 B.R. 88, 91 (Bankr. M.D. Fla. 1997). Although no notice was given to the shareholder, the court found that the *ex parte* order allowing the committee to proceed in Guernsey with their request to freeze the transferred funds did not violate due process but merely preserved the status quo. *Id.* at 97. In so holding, the court drew a distinction between freezing assets and seizing them. *Id.* For the sake of argument, however, the court discussed seizures in general, explaining that while notice and a hearing generally are required before property may be seized, exceptions are allowed when the moving party can show exigent and extraordinary circumstances. *Id.* The court announced its determination that such circumstances warranted a hearing on the committee's motion without notice to the shareholder using as examples his "pattern of lack of cooperation" and deliberate destruction of necessary financial documents. *Id.* In the court's view, the committee's concerns that more documents would be destroyed and the funds in Guernsey would be transferred were legitimate. *Id.*

17. In summary, the Trustee has the requisite authority to obtain a temporary restraining order. The Trustee's motion is brought *ex parte* out of concern that notice to the Debtors would result in dissipation or concealment of any assets the Debtors did not list on their bankruptcy schedules. Indeed, the Affidavits outline that the circumstances presented are extraordinary and require that the Trustee proceed without notice.

It is therefore **ORDERED** that:

1. The Debtors shall surrender to the Trustee (who may act through agents of his selection) all property in which they have any interest, legal or equitable, currently located at the warehouse facility called Mini-Warehouses by Cann located at 1671 Upper Armstrong Road, Belmont, North Carolina, including specifically all property in Unit #27, Unit #35, Unit #94 and Unit #96 whether or not these Units are in the name(s) of one or more of the Debtors (the "Property"), and the Trustee is authorized to take the Property for storage by the Trustee at Advanced Bonded Warehousing & Distribution Services at 299 South I-85 Service Road, Charlotte, NC 28208, or such other place as the Trustee may determine, until such time as the court can determine rightful ownership of the Property;

2. The Debtors and all other parties are restrained from taking any action with respect to the Property or the Trustee or his agents other than to cooperate with the Trustee in arranging for the secure storage of the Property as described above;

3. The Court shall conduct a hearing on a preliminary injunction with respect to the subject matter of this order on the 20th day of September, 2005, at the United States District Court, 401 West Trade Street, Charlotte, NC; *COURTROOM 3 at 2:00 P.M.*

4. Once the Trustee has possession of the Property he shall inventory it, including opening and inspecting any closed containers or boxes, and if he desires, have the Property appraised, and to the extent that some of the Property is financial records, including computer drives and disks, he is authorized to copy such material;

5. In removing the Property from the warehouse the Trustee is authorized to cut the locks on the storage units and to take other action reasonably necessary to gain access;

6. The owner of the warehouse shall immediately furnish the Trustee a rent roll of all other units in the warehouse to permit the Trustee to determine if the units are rented by the Debtors or their family members or affiliates, and should the Trustee discover other such units he is authorized to inspect and remove property which may be property of one or more of the estates and to store such property as described in this order;

7. The Trustee shall immediately serve a copy of this Temporary Restraining Order on the Debtors and their counsel of record in the bankruptcy cases;

8. The Debtors shall immediately disclose to the Trustee all other locations, including warehouses, in which property in which they may have an interest is located; and

9. The Debtors are enjoined from disposing of any property that may be property of one of their bankruptcy estates, and they are enjoined from destroying or otherwise spoiling or damaging financial records, or erasing or reformatting computer data, and in this regard the Debtors shall immediately deliver to the Trustee all computers and financial records in their possession, custody or control;

10. The Debtors are enjoined from making any contact with any jewelry store, art gallery, pawn shop and the like, and they shall immediately furnish the Trustee a list of such locations they or anyone on their behalf have contacted since July 2004, including providing

8

specific details of the purpose of such contacts and the identity of the people at each location with whom they spoke. If any such store currently has or ever had any property of the Debtors or their affiliates, the Debtors shall describe that property to the Trustee in detail, and shall cooperate with the Trustee in permitting the Trustee to obtain possession of that property or the sales proceeds of that property.

11. The Debtors shall immediately deliver to the Trustee all cash in their possession, custody or control in excess of $1,000 for each Debtor. The Debtors shall immediately deliver all checks of any kind which they have in their possession, custody or control. The court will determine the ultimate disposition of the cash and checks at the hearing on whether this order should be converted to an injunction.

Dated this 13th day of September 2005. at 12:05 PM EDT

Graham C. Mullen
Chief United States District Judge