FILED
IN COURT
CHARLOTTE, N. C.

SEP 2 0 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
<u>Charlotte Division</u>

Case No. 3:05CV391

| | |
|---|---|
| In re:<br><br>NICHOLAS DIBRUNO AND WENDY DIBRUNO,<br><br>       Debtors. | Bankruptcy Case Number 05-33005<br>Chapter 7 |
| In re:<br><br>JOSEPH A. DIBRUNO, JR.,<br><br>       Debtor. | Bankruptcy Case Number 05-33006<br>Chapter 7 |
| In re:<br><br>JOSEPH W. DIBRUNO, SR.,<br><br>       Debtor. | Bankruptcy Case Number 05-33007<br>Chapter 7 |
| In re:<br><br>LELA L. DIBRUNO,<br><br>       Debtor. | Bankruptcy Case Number 05-33712<br>Chapter 7 |

## <u>ORDER GRANTING PRELIMINARY INJUNCTION</u>

This matter was heard on September 20, 2005 in connection with the *Temporary Restraining Order* ("TRO") entered on September 13, 2005, which was filed under seal pursuant to a separate Order entered by this Court on September 13, 2005. The TRO was entered on the *Ex Parte Motion For Order Directing Debtors To Surrender Property With Request For Temporary Restraining Order And Injunction* (the "Motion") by Langdon M. Cooper, the court-appointed trustee (the "Trustee") in the bankruptcy cases of Nicholas DiBruno ("Nick DiBruno") & Wendy DiBruno, Joseph A. DiBruno, Jr. ("DiBruno, Jr.") and Joseph W. DiBruno, Sr.

Nicholas DiBruno, et al.
Doc. 16
Dockets.Justia.com

("DiBruno, Sr."). The Motion and the TRO also extended to a related party, Lela L. DiBruno, a debtor in an involuntary bankruptcy case filed on September 9, 2005 ("Lela DiBruno" and, collectively with Nick DiBruno, DiBruno, Jr. and DiBruno, Sr., the "Debtors"). Notice of the TRO was provided to the Debtors and their counsel on September 15, 2005. The Court, having reviewed the Motion and the evidence, and considered the arguments of counsel, has determined that the Trustee's request for a preliminary injunction should be granted.

## JURISDICTION

1.  This Court has jurisdiction over the above-referenced bankruptcy cases and all of the property of these bankruptcy estates pursuant to 28 U.S.C. § 1334(a) and (e). On September 13, 2005, this Court entered an Order Withdrawing Reference of Bankruptcy Cases pursuant to 28 U.S.C. § 157(d), which Order withdrew the reference to the bankruptcy court as to each of the Debtors' cases. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2.  Nick DiBruno, DiBruno, Jr. and DiBruno, Sr. filed their voluntary petitions pursuant to chapter 7 of the United States Bankruptcy Code on July 26, 2005. The Trustee is the duly appointed chapter 7 trustee in each of these Debtors' cases.

3.  Creditors Locke Holland and Cynthia Dimmette filed an involuntary chapter 7 petition against Lela DiBruno on September 9, 2005. No trustee has been appointed and no order for relief has been entered.

4.  Nick DiBruno, one of the Debtors, is a thirty-three year-old male. He currently resides with his wife, Wendy, also a debtor, and their child at 184 Reese Wilson Road in Belmont, Gaston County, North Carolina, 28012.

5.  DiBruno, Jr., one of the Debtors, is a thirty-six year-old unmarried male. He

currently resides at one or more locations: (a) with his father at 7319 Wilkinson Boulevard, Belmont, Gaston County, North Carolina 28012; (b) with his mother at 103 Poplar Street, Belmont, Gaston County, North Carolina 28012; or (c) 107 Westwood Drive, Belmont, Gaston County, North Carolina 28012, a house owned by his mother but otherwise unoccupied.

6. DiBruno, Sr., one of the Debtors, is a seventy-one year-old male and the father of DiBruno, Jr. and Nick DiBruno. DiBruno, Sr. currently resides at 7319 Wilkinson Boulevard, Belmont, Gaston County, North Carolina 28012.

7. Lela DiBruno is the former wife of DiBruno, Sr. and the mother of Nick DiBruno and DiBruno, Jr. Until recently, she maintained the family residence at 107 Westwood Drive, Belmont, Gaston County, North Carolina 28012, but currently resides with her sister, Mary "Punk" Smiley, at a rental property located at 103 Poplar Street in Belmont.

8. The testimony shows that one or more of the Debtors, including specifically DiBruno, Jr., moved substantial property from the house at 107 Westwood Blvd. in Belmont to a warehouse facility called Mini-Warehouses by Cann, including at least Units 27, 25, 31, 94 and 96, located at 1671 Upper Armstrong Road in Belmont, NC, using a red pickup truck, a large Budget Rental Truck (approximately 30 feet long) and a separate U-Haul Rental Truck (approximately 18 feet long). The Motion reflected the Trustee's concern that the property moved might disappear resulting in immediate and irreparable injury, loss or damage to the Debtors' bankruptcy estates.

9. The TRO was entered on September 13, 2005. Among the provisions of the TRO were the following:

> a. That the Debtors surrender to the Trustee or his agents all property in which they have any interest, legal or equitable, located at the Mini-Warehouses by Cann warehouse facility, including specifically property in Unit #27, Unit #35, Unit #94 and Unit #96 whether or not those Units were in the names of

3

one or more of the Debtors (the "Property");

b. That the Trustee was authorized to take the Property for storage by the Trustee at Advanced Bonded Warehousing & Distribution Services at 299 South I-85 Service Road, Charlotte, NC 28208, or such other place as the Trustee determined, until such time as the Court could determine the rightful ownership of the Property;

c. That the Trustee, after taking possession of the Property, was to inventory it, including opening and inspecting any closed containers or boxes, and, if the Trustee elected, having the Property appraised;

d. That the Trustee was authorized to copy financial records, including computer drives and disks;

e. That the owner of the warehouse was to immediately furnish the Trustee with a rent roll of all other units at the warehouse to permit the Trustee to determine if the units were rented by the Debtors or their family members or affiliates, and if the Trustee discovered other such units, he was authorized to inspect and remove property which may be property of one or more of the estates and store such property as described in the TRO;

f. That the Debtors were to immediately disclose to the Trustee all other locations, including warehouses, in which property in which they may have an interest is located;

g. That the Debtors were enjoined from disposing of any property that may be property of one of their bankruptcy estates, and they were enjoined from destroying or otherwise spoiling or damaging financial records, or erasing or reformatting computer data, and in that regard, were immediately to deliver to the Trustee all computers and financial records in their possession, custody or control;

h. That the Debtors were enjoined from making any contact with any jewelry store, art gallery, pawn shop and the like, and that they were to immediately furnish the Trustee with a list of such locations they or anyone on their behalf have contacted since July 2004, including providing specific details for the purpose of such contacts and the identity of the people at each location with whom they spoke. Further, that if any such store currently has or ever had any property of the Debtors or their affiliates, the Debtors were to describe that property to the Trustee in detail, and cooperate with the Trustee in permitting the Trustee to obtain possession of that property or the sales proceeds of that property; and

i. That the Debtors were to immediately deliver to the Trustee all cash in their possession custody or control in excess of $1,000 for each Debtor. Further,

4

that the Debtors were to immediately deliver all checks of any kind which they have in their possession, custody or control. And further, that the Court will determine the ultimate disposition of the cash and checks at the hearing on whether the TRO should be converted to an injunction.

10. After reviewing the rent roll at the Mini-Warehouses by Cann, the Trustee determined that Units 27, 31 and 35 were registered in the name of Joe DiBruno. Units 94 and 96 were registered in the name of Mary Reese, the sister of Lela DiBruno. The Trustee has moved all of the contents of these five units to an account in his name at Advanced Bonded Warehousing & Distribution Services, subject to further order of this court.

11. On September 15, 2005, the Trustee conducted four house inspections, pursuant to the separate order of this Court entered on September 14, 2005. During those inspections, the Trustee discovered assets that appeared to be especially valuable or likely to disappear, as well as numerous assets not scheduled y the Debtors in their petitions. Pursuant to the oral order of this court, issued telephonically on September 15, 2005, and in addition to various and multiple financial records and computers the Trustee removed the following property from the following locations (such records, computers and removed property being hereinafter called the "Removed Personalty"):

    a. 7319 Wilkinson Boulevard (residence of DiBruno, Sr.):

        i. See attached Exhibit "A".

    b. 103 Poplar St. (residence of Lela DiBruno and sometimes residence of DiBruno, Jr.:

        i. See attached Exhibit "B".

    c. Reese Wilson Road (residence of Nick DiBruno):

        i. See attached Exhibit "C".

    d. 107 Westwood, Belmont, NC (sometimes residence of DiBruno, Jr. and

former residence of Lela DiBruno, also owned by Lela DiBruno):

    i. Computer (Sony CPU)

## DISCUSSION

12.    Rule 7065 of the Fed. R. Bankr. P. makes Rule 65 of the Fed. R. Civ. P. applicable in bankruptcy cases. Rule 65(a) provides that no preliminary injunction shall be issued without notice to the adverse party. In cases such as this, when the court has entered a temporary restraining order without notice, the temporary restraining order will expire by its terms, not to exceed 10 days, unless the court extends the time fixed in the order for good cause, or unless the party against whom the order is directed consents to an extension for a longer period. Rule 65(b). When the motion that triggered the temporary restraining order comes on for hearing, the party who obtained the temporary restraining order shall proceed with an application for a preliminary injunction, and, if that party does not proceed, the court is to dissolve the temporary restraining order. *Id.*

13.    The reasons for an injunction shall be set forth in the order and are required to be specific and to describe in reasonable detail, not by reference to another document, the act or acts sought to be restrained. Rule 65(e). Injunction orders are binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those "in active concert or participation with them" who are served with actual notice of the order. *Id.*

14.    The Fourth Circuit has set forth the inquiry district courts are to conduct in determining whether to issue an injunction. In *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manuf. Co. Inc.*, 550 F.2d 189 (4th Cir. 1977), the court stated:

> The two . . . important factors are those of probable irreparable injury to the plaintiff without a decree and the likely harm to the defendant with a decree. If

6

>that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.

550 F.2d at 196. As this Court has stated, courts are to consider four factors, the first two of which are the most critical. *Byrd v. Moore*, 252 F. Supp.2d 293, 297 (W.D.N.C. 2003) (considering an injunction in the context of a habeas corpus action). These factors are: 1) the likelihood of irreparable harm to the plaintiff without the temporary injunction; 2) the likelihood of harm to the defendant with the injunction; 3) the plaintiff's likelihood of success on the merits; 4) the public interest. *Id.* at 297-98. If the harm to the plaintiff greatly outweighs the harm to the defendant, then there has been enough of a showing to allow the court to issue an injunction. *Id.* at 298. As the harm to the plaintiff decreases when balanced against the harm to the defendant, "the likelihood of success on the merits becomes more important." *Id.* A showing of likely success on the merits is insufficient, however, to warrant issuance of an injunction because the plaintiff must always show some risk of irreparable injury. *Id.*

17.    In this case, the balance of harms weighs in favor of the Trustee and against the Debtors. Upon the filing of a bankruptcy case, an estate is created consisting of, among other property, all the interests of the debtor in property under the debtor's sole, equal, or joint management and control as well as proceeds of such property. 11 U.S.C. § 541(a). Thus any interests in property held by Nick DiBruno, DiBruno, Jr. or DiBruno, Sr. became property of their respective bankruptcy estates as of July 26, 2005. Likewise, any property interests held by Lela DiBruno became property of her bankruptcy estate on September 9, 2005, subject to the entry of an order for relief.

18.    The Property that was the subject of the TRO was stored at a mini-warehouse facility in the names of DiBruno, Jr., one of the Debtors, and the name of Mary Reese, the sister

7

of Lela DiBruno and the aunt of DiBruno, Jr. and Nick DiBruno. The Removed Personalty was located and removed from the residences of one or more of the Debtors. Accordingly, absent a contrary showing by the Debtors, the Property stored in the name of DiBruno, Jr., and all of the Removed Personalty, constitutes property of one or more of their bankruptcy estates. The fact that the Property was removed from one of the Debtors' homes and placed in storage without notification to the Trustee raises questions as to the Debtors' proposed disposition of the Property. The fact that the Removed Personalty was not scheduled in the petitions of the Debtors as required by law also raises serious questions not simply about the veracity of the Debtors, but about their intent to dispose of the Removed Personalty. Moreover, the testimony in the record of these cases unequivocally shows that the Removed Personalty and the Property taken from the warehouse includes items not disclosed on the bankruptcy schedules of Nick DiBruno, DiBruno, Jr., or DiBruno, Sr.[1] That portion of the Property stored in the warehouse in the name of Mary Reese, a party closely related to the Debtors, may or may not be property of the estate. However, the testimony showed that at least some of the Property stored in Units 94 and 96 was moved with the property from 107 Westwood in Belmont. The house at 107 Westwood is owned by Lela DiBruno, a debtor, and was listed in the bankruptcy schedules of DiBruno, Jr. as his residence. It appears to the Court that the Trustee's interests in preserving and administrating the bankruptcy estates of Nick DiBruno, DiBruno, Jr., or DiBruno, Sr. as well as the ability of a trustee in Lela DiBruno's case to do the same, would be irreparably harmed if the Debtors were permitted to exercise control over the Property or the Removed Personalty.

19. In contrast, the risk of potential harm to the Debtors appears small. Should an inventory of the Property and the Removed Personalty, or further testimony before this Court by the Debtors or third parties, or other documentation, reveal that the Property or Removed

---

[1] Lela DiBruno, as a debtor in an involuntary case, has not filed bankruptcy schedules as of this date.

Personalty is property which in fact is owned by a third party, then such property would not be property of any of the bankruptcy estates. 11 U.S.C. § 541(d). In that event, the Property or Removed Personalty can be returned to its rightful owners. Meanwhile, however, the Property and Removed Personalty is being stored by the Trustee under lock and key. The Debtors' risk of harm is negligible under these circumstances.

20. Because in the Court's analysis it appears that the potential risk of harm to the Trustee outweighs the risk of harm to the Debtors, examination of the likelihood of the Trustee's success on the merits is of diminished importance. Nevertheless, the Court is of the opinion that the Trustee is likely to succeed in this instance.

21. Among a bankruptcy debtor's duties is the duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title." 11 U.S.C. § 521. Moreover, debtors sign their bankruptcy petitions and tender the accompanying schedules under penalty of perjury. Fed. R. Bankr. P. 1008. Knowing and fraudulent concealment of any bankruptcy estate property subjects a debtor to the possibility of a fine, imprisonment, or both. 18 U.S.C. § 152. Therefore, given the Debtors' duty to turn property over to the Trustee and the proscriptions against concealing bankruptcy estate assets, it appears that the Trustee has an excellent chance of succeeding on the merits in this case. *See In re Uniflex, Inc.*, 319 B.R. 101 (Bankr. D.Del. 2005) (stating that establishing success on the merits requires a showing that the movant would be entitled to relief under the law on which the claims are based).

22. The public policy expressed in the broad contours of the Bankruptcy Code and Rules and the criminal provisions relating to concealment and disposition of estate property

9

support the Trustee's position. In addition, the public has an interest in seeing that the integrity of the bankruptcy process is maintained. The Court believes that the public interest is best served when debtors are held to strict compliance with the Bankruptcy Code and related statutes and rules. Issuance of a preliminary injunction in the Debtors' cases will serve that public policy goal.

## CONCLUSION

23. The balance of harms weighs in favor of granting the Trustee's application for a preliminary injunction. The Trustee's prospect of succeeding on the merits are excellent given the provisions of the Bankruptcy Code and statutes relative to bankruptcy crimes. Finally, public policy concerns relative to the integrity of the bankruptcy process militate in favor of the Trustee.

**IT IS, THEREFORE, ORDERED** that:

1) The Trustee's motion for a preliminary injunction is GRANTED;

2) The court confirms its oral order, entered telephonically on September 15, 2005, and authorizes the Trustee to continue to hold, at Advanced Bonded Warehousing & Distribution Services, or at such other location which the Trustee deems secure, all Property, and all Removed Personalty, that is, all property removed from the warehouse, and all financial records, the computers and all the property identified on the attached Exhibits, and to the extent the Trustee deems appropriate, to have those items appraised, all pending further order of the court.

3) The Trustee shall inventory the Property and Removed Personalty, including opening and inspecting any closed containers or boxes, and if he desires, have the Property or Removed Personalty appraised, and to the extent that some of the Property or Removed Personalty is financial records, including computer disks and drives, the Trustee is authorized to copy such material, and the Trustee may return computers only if they were properly scheduled and if he believes them to be properly exempt, or if he believes them to be property of a third party;

4) The Debtors shall immediately disclose to the Trustee all other locations, including warehouses, in which property in which they have an interest is located;

5) The Debtors are enjoined from disposing of any property that may be property of one of their bankruptcy estates, and they are enjoined from destroying or otherwise spoiling or damaging financial records, or erasing or reformatting computer data, and

in this regard the Debtors shall immediately deliver to the Trustee all computers and financial records in their possession, custody or control;

6) The Debtors are enjoined from making any contact with any jewelry store, art gallery, pawn shop and the like, and that they shall immediately furnish the Trustee with a list of such locations they or anyone on their behalf have contacted since July 2004, including providing specific details for the purpose of such contacts and the identity of the people at each location with whom they spoke. If any such store currently has or ever had any property of the Debtors or their affiliates, the Debtors shall describe that property to the Trustee in detail, and cooperate with the Trustee in permitting the Trustee to obtain possession of that property or the sales proceeds of that property;

7) The Court has determined by the greater weight of the evidence that the $30,000 cash the Trustee removed from the bedroom of DiBruno, Jr., and all of the other Removed Personalty, is property of one or more of the Debtors' bankruptcy estates, and the Trustee may proceed after notice and a hearing to sell the tangible personal property, and thereafter he may deposit funds from the sale or sales in his bankruptcy estate accounts for use in paying such claims as the Court determines, including administrative claims. The Trustee may immediately deposit the $30,000 in his estate account and make disbursements as authorized by the Court;

8) The Debtor Nick DiBruno and Grumpy's Custom Motorcycles, Inc. shall immediately without delay deliver to the Trustee or his agent all motorcycles owned by any of the Debtors or their affiliates, including but not limited to the Custom Motorcycle with the vehicle identification number being 58506033851S92RV1B82R635582. Should Grumpy's Custom Motorcycles, Inc. assert a mechanic's lien, that lien shall be preserved and this Court will determine the validity of the lien after a notice and hearing;

9) The Debtor Nick DiBruno shall immediately and without delay deliver to the Trustee, or his agent, the golf cart, the Jesse James tool set and box, and the Pioneer Elite television, all of which the Trustee viewed at Nick DiBruno's residence on September 15, 2005;

10) The Debtor DiBruno, Jr. shall immediately without delay deliver to the Trustee, or his agent, the framed etching or pencil drawing which depicts a landscape of three buildings, a river and a road, with broken glass, which the Trustee's viewed under his bed on September 15, 2005;

11) The Debtors shall immediately and without delay provide the Trustee the combinations and keys to all safes and lockboxes, including the ones which were in storage at the mini-warehouse and are now located at Advance Bonded Warehouse.

11

Dated this 20th day of September, 2005.

Graham C. Mullen
Chief United States District Judge

12