UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Case No. 3:05 CV 391-MU

| | |
|---|---|
| In re: | Chapter 7 |
| Joseph A. DiBruno, Sr. | Bankruptcy Case Number 05-33007 |
| | Bankruptcy Case Number 05-33006 |
| Joseph A. DiBruno, Jr. | Bankruptcy Case Number 05-33005 |
| Nicholas DiBruno<br>Wendy DiBruno | Jointly Administered |
| Debtors | |
| In re: | Chapter 7 (pending involuntary) |
| Lela L. DiBruno | Bankruptcy Case Number 05-33712 |
| Debtor | |

## ORDER DENYING DEBTORS' OBJECTION TO ORDER, MOTION TO CLARIFY & MOTION FOR RE-HEARING

THIS MATTER came on to be heard this day on the Debtors' "Notice of Objection to Order, Motion to Clarify and Motion for Re-hearing" (the "Debtors' Objection and Motions") and the Trustee's Response thereto, and after reviewing the record, and considering the arguments and statements of the Trustee and the Debtors, the Court has determined it will deny the Debtors' Objection and Motions. In that regard the Court finds, concludes and orders:

1. The Debtors complain today that a Preliminary Injunction this Court entered by Order on 20 September 2005 (the "Order"), after full and adequate notice and a hearing as that phrase is used in the United States Bankruptcy Code, is unfair to them and somehow should be reconsidered. At the approximate four hour hearing on 20 September 2005 the

Debtors, who were represented at that time by counsel of record, elected to appear *pro se*, and this Court granted the Debtors great leeway to argue what they desired, and the Court provided them every opportunity to present what evidence they believed supported their position. There is no question in the Court's mind that the injunction entered by the court continues to be required, and nothing has changed the conclusion of the Court that the injunction was and is clearly warranted. The evidence at the hearing overwhelmingly supported the Trustee's position that the Debtors in the voluntary cases have concealed material quantities of assets not scheduled on their petitions and that they have failed to disclose material transfers of assets, all as required by the Bankruptcy Code, and further that all of the Debtors were relocating and concealing assets after all bankruptcy petitions had been filed – both the three voluntary petitions and the one involuntary petition. Indeed, the testimony of several of the Debtors in the voluntary cases disclosed disbursements of over $250,000 cash within the weeks before and after the voluntary petitions were filed – and in direct and intentional disregard for the requirements of the Bankruptcy Code, none of this cash or these transfers were disclosed in the voluntary petitions. In their Objection and Motions the Debtors raise no new issues, no new facts and no new arguments. They propound but a single, material legitimate point for clarification – the court did state at the hearing that the Debtor Nick DiBruno did not have to immediately deliver to the Trustee a golf cart. Including the words "golf cart" with other property that was to be turned over to the Trustee in the Order was an error as the Court did state that the golf cart did not have to be delivered to the Trustee at this time based on the sworn testimony of the Debtor Nick DiBruno that it was purchased and owned by a third party. The Chapter 7 Trustee has taken no action to seize the golf cart.[1] The golf cart need not be delivered to the Trustee at this

---

[1] With respect to the balance of numbered paragraph 9 of the Order, the Debtor Nick DiBruno has failed to

2

time. The Debtors shall retain possession of the golf cart, keeping it safe and secure, and they shall immediately provide full and detailed documentation to the Trustee or his counsel to prove the ownership of the golf cart and all detail on the source of the funds used to acquire it. If the Debtors fail to deliver this evidence to the Trustee or his counsel, the Trustee shall notify the Court, and the Court shall determine what action to take, including the contempt powers of this Court. Once the Trustee has this evidence he can determine whether the golf cart is property of the one of the estates of the Debtors, and this Court will hear any contested matter on the ownership of the golf cart.

2. With respect to the Debtors' specific allegations in their Objection and Motions, the finds and concludes as follows:

    a. The use of a "W" instead of an "A" to identify Joseph A. DiBruno, Sr. is a typographical error and all parties shall note the correct spelling in future pleadings. The exclusion of Lela DiBruno's name from the caption of some orders, and the inclusion of her name in other orders, is because some orders apply to her and some do not. Lela DiBruno is the subject of an involuntary bankruptcy petition. She has not answered the involuntary petition. No order for relief has been entered in her case at this time. In light of the testimony during the hearing on 20 September 2005, the Court properly determined that Lela DiBruno should be subject to the Court's Order and hence her name was included in the caption of the Order.

---

comply with the Court's specific direction to deliver to the Trustee or his agent the Pioneer Elite large screen high definition television or the Jesse James tool set and box. The Debtors shall immediately deliver these items to Alan Fisher, the Trustee's auctioneer.

3

b.  The Court properly found that the relief sought by the Trustee in his Motion for Order Directing Debtors to Surrender Property with Request for Temporary Restraining Order and Injunction properly and lawfully extended to Lela L. DiBruno as a related party.

c.  The findings of the Court at Numbered Paragraphs 17 and 18 of the Order clearly indicate why the Court extended the Order to any property removed by the Debtors from 107 Westwood to the Mini-Storage Warehouses. The detailed findings of the Court in Numbered Paragraphs 17 and 18 the Order speak for themselves in this regard.

d.  The Court heard about four (4) hours of testimony regarding this matter, including testimony from the Debtors regarding their conduct over the weeks prior to the hearing. Based on such testimony, the Court determined that, by entering its Order, the risk of potential harm to the Debtors is negligible under the circumstances. The Debtors have already had the opportunity to be heard on this issue and there is no need for a rehearing. Regarding the computers, that is, the CPUs, which the Trustee seized pursuant to the oral order of this Court, along with other non-exempt personal property of the Debtors in the voluntary cases (in the aggregate called the "Removed Personalty" in the Order), the Chapter 7 Trustee has returned the CPUs of the two (2) children, and properly retained the other CPUs, as assets of the estates of the Debtors in the voluntary cases. The exemptions of $200 to $500 in "computer equipment" asserted by the Debtors in the voluntary

cases are being applied to their printers and other computer equipment left at their residences. The CPU's – the computers which the Trustee has retained n his possession – are not exempt.

e. In paragraph 20 the Court determined that the Trustee was likely to succeed on the merits. The Debtors have already had the opportunity to be heard on this issue and there is no need for a rehearing.

f. Decretal paragraphs 2 and 7 must be read together. Decretal paragraph 2 provides that the Trustee shall hold the Property (defined in the Order as the personal property discovered and removed from the Mini-Warehouse) and all Removed Personalty (all non-exempt personal property removed from the residences pursuant to the oral order of the Court), as well as all financial records, the CPUs and all property identified on the Exhibits to the Order, and if applicable to have those items appraised. This Court may conduct a later hearing on whether or not all of the Property (that is the personal property removed from the mini-warehouse) is property of the estates under 11 U.S.C. §541, but the Court properly determined that there is a likelihood of success on the merits that at least some of the Property will be determined to be property of one or more of the estates in the voluntary cases under 11 U.S.C. §541. Further, both the Property and the Removed Personalty will be appraised and sold at the discretion and timing of the Trustee and the Court. Under decretal paragraph 7 of the Order, the Removed Personalty (the $30,000 cash and other personal property removed

from the residences) has already been determined by the Court to be property of one or more of the estates of the Debtors in the voluntary cases, and this Removed Personalty may be immediately used or sold by the Trustee.

g. Numbered Paragraph 3 on Page 10 of the decretal portion of the Order specifically provides that the Trustee is authorized to copy all financial records, computer discs and drives and <u>may</u> return such computers <u>only if</u> they were properly scheduled and if the Trustee believes them to be properly exempt. After reviewing the schedules in more detail, the Court agrees with the Trustee that the computers (the CPUs) were not properly scheduled and they are not properly exempt, in that the descriptions were not adequate to determine which computers the Debtors were trying to exempt. In that regard, the Chapter 7 Trustee left the Debtors with substantial computer equipment, printers and other ancillary items that satisfy their attempted exemption. In addition, the Trustee copied over 9,000 pages of records and the originals or copies have been returned to the Debtors.

h. The Court heard testimony regarding the Debtors frequent contact with jewelry stores, art galleries, pawn shops and the like, and as such, the Court properly enjoined the Debtors from making any further contact with such entities out of serious concerns about the Debtors intent to depose of their assets. The Court's findings and determination in

Numbered Paragraph 6 of the decretal portion of Order are just and proper.

i. The Court heard testimony regarding the Chapter 7 Trustee's discovery of $30,000.00 in cash and other numerous and valuable assets in the residences of one or more of the Debtors in the voluntary cases, none of which was disclosed by these Debtors on any of their bankruptcy schedules (this is the "Removed Personalty" as defined in the Order). At no time during the lengthy hearing did the Debtors present any evidence that the $30,000.00 in cash and other Removed Personalty was the property of anyone other than the Debtors in the voluntary cases. Indeed the Court determined by the greater weight of evidence that the Removed Personalty, including the $30,000 cash removed from one of the bedrooms of the Debtors in the voluntary cases, was property of one or more of the estates of the Debtors in the voluntary cases which the Trustee may immediately use or sell under 11 U.S.C. §363. As such, there is no basis for the Debtors to be reheard on this issue. Indeed the testimony and the record in these cases suggest the Debtors routinely and surreptitiously move and conceal assets to avoid the reach of creditors, including for example the more than $250,000 which was under the legal dominion, control and possession of the Debtors Joseph A. DiBruno, Jr. and Joseph A. DiBruno, Sr., when they as remitters disbursed to relatives and friends

in the days and weeks before and after they filed their voluntary bankruptcy petitions.

j. The Court heard all the relevant evidence regarding the motorcycle presently in the possession of Grumpy's Custom Motorcycles, Inc. This evidence clearly proved that the motorcycle was titled in the name of Debtor Nick DiBruno and was his property. Notwithstanding that fact, the court is now aware that on 17 August 2005 the Debtor Joseph A. DiBruno, Jr. attempted to convey a lien on the motorcycle to one Rachel Ellen Bean, his girlfriend, and the Trustee has an adversary proceeding pending to avoid multiple transfers to Rachel Bean, including the grant of the purported lien on the motorcycle. As such, the Court's findings in Numbered Paragraph 8 on Page 11 of the decretal portion of the Order are correct.

k. As ordered above, for the moment the Debtor Nick DiBruno does not have to turn over the golf cart in his possession so long as he complies with this Order.

l. Evidence was presented and arguments made regarding the delivery of all the items referenced in Numbered Paragraph 10 on Page 11 of the decretal portion of the Order. The Court's Order correctly reflects the evidence and arguments made before it during the hearing.

3. The Court denies the Objections and Motions of the Debtors, except the clarification with respect to the golf cart, all as set forth above.

**IT IS SO ORDERED.**

This the 17th day of October, 2005.

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge