UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Case No. 3:05 CV 391-MU

| | |
|---|---|
| In re: **JOSEPH A. DIBRUNO, SR.** Debtor | |
| In re: **NICHOLAS DIBRUNO and WENDY DIBRUNO** Debtors | |
| In re: **JOSEPH A. DIBRUNO, JR.** Debtor | |
| **LANGDON M. COOPER**, Trustee In Bankruptcy for Joseph A. DiBruno, Sr., Nicholas DiBruno and Wendy DiBruno, and Joseph A. DiBruno, Jr. Movant, vs. **JOSEPH A. DIBRUNO, JR.** and **JOSEPH A. DIBRUNO, SR.** Debtors and Respondents | Bankruptcy No. 05-33007 (Chapter 7) Bankruptcy No. 05-33005 (Chapter 7) Bankruptcy No. 05-33006 (Chapter 7) **Jointly Administered** |

**ORDER DIRECTING JOSEPH A. DIBRUNO, JR. TO APPEAR BEFORE THIS COURT, AND TO PRODUCE CERTAIN RECORDS**

THIS MATTER came on to be heard after notice and a hearing on 21 November 2005, and the Court finds and concludes as follows:

1. A voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Code") was filed by each Debtor on 26 July 2005 in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"). Langdon M. Cooper (the "Trustee") was subsequently appointed to serve as the Trustee in each case. The reference for the base bankruptcy cases was withdrawn to the United States District Court (the "District Court") under Order dated 13 September 2005. The three base bankruptcy cases set forth in the caption of this Order are being jointly administered under Order of the District Court dated 20 September 2005.

2. The Trustee, in a home inspection of Joseph DiBruno, Jr. on 15 September 2005, discovered receipts evidencing cash of at least $255,000 flowing through the possession of Joseph DiBruno, Sr. and/or Joseph DiBruno, Jr. during the period of 24 June 2005 through 12 August 2005. $165,000 of the cash was paid in and disbursed prior to 26 July 2005. Although required by the Code to be

disclosed under penalty of perjury, this cash was not disclosed in the debtors' bankruptcy petitions as an asset, or as income or as disbursements.

3. The Trustee filed a *Motion For Turnover & Compliance with Sections 521 and 542 of the [Bankruptcy] Code* on 13 October 2005, seeking, among other relief, an order directing debtors Joseph DiBruno, Sr. and Joseph DiBruno, Jr. to turn over the $255,000 in cash and provide to the Trustee a full accounting of the receipt and any disbursements of the $255,000 in cash.

4. On 17 October 2005 this Court issued an *Interim Order Directing (DiBruno Sr. and DiBruno Jr.) To Produce Documents Prior To Hearing*. That order provided specifically that:

> A. The Respondents, Joseph A. Dibruno, Sr. and Joseph A. DiBruno, Jr., shall no later than Wednesday, 9 November 2005, deliver to the offices of the Trustee and his co-counsel, at the addresses set forth in the record of this case, a full, complete, and detailed accounting of the source, any disbursements and present location of the cash described in the Trustee's Motion for Turnover and Compliance with Sections 521 and 542 of the Code (the "Motion") (docket no. 40). As an integral part of this accounting, the Respondents shall at the same time deliver to the offices of the Trustee and his co-counsel true copies of all documentation concerning this accounting, including copies of all relevant documents of any kind, all statements of the last 12 months for all accounts from which or into which the $255,000, or any portion thereof, was deposited, and all checks and other advices of credits and debits in those accounts. The accounting shall be organized to enable the Trustee to trace fully the origin and intermediate transfers and current location of this cash. In this regard the Respondents are directed to freeze and otherwise protect the funds pending further order of this Court.
>
> B. Should the Respondents fail to provide this accounting in a proper and timely manner, and otherwise comply with the terms of this Order, this Court will additionally consider at the hearing on the Trustee's Motion on 21 November 2005 whether the Respondents and any party acting in concert with them shall be held to be in contempt of this Court, and subject to the full contempt power of this Court, including imprisonment.

5. Joseph DiBruno, Sr. filed a response on 9 November 2005

representing that he had no knowledge concerning the $255,000 cash.

6. Joseph DiBruno, Jr. ("DiBruno, Jr.") filed a response on 9 November 2005 (the "Response") representing simply that the $255,000 was paid to him by Clifford K. Callaway, but without attaching any checks from Clifford Callaway ("Callaway") or other evidence of the transfer to DiBruno, Jr. other than a letter purportedly signed by Callaway which cryptically summarized transfers of $285,000 to DiBruno, Jr. DiBruno, Jr. further states that the funds were disbursed by him in accordance with a two page "accounting" attached to the Response, which accounting includes the following:

   a. The return of $90,000 to Callaway,
   b. Loans of $53,500 to the debtors and family members of the debtors for "living expenses,"
   c. Loans of $16,500 for legal fees & expenses,
   d. Loan of $30,000 to Dr. Bruce Wallace,
   e. $30,000 to Cecil Minges for a currency trading investment for Callaway, and
   f. $35,000 for an interest in an Apollo 11 flight manual for Callaway.

7. DiBruno, Jr.'s Response is not the "full, complete, and detailed accounting" which this Court explicitly directed him to furnish. It contains very little of the information this Court required him to furnish. The court notes that for the moment it will accept as accurate DiBruno, Sr.'s statement that he knows nothing about these funds. Should the evidence later disclose this not to be the case, the Court will deal with DiBruno, Sr. to the fullest extent provided by law.

8. At the eleventh hour on the Friday before the Monday hearing DiBruno, Jr. filed a motion with the Court seeking to have the Court excuse him from testifying in this proceeding "till *[sic]* his mental condition has improved". The Court declines to excuse him.

9. DiBruno, Jr. has utterly failed to comply with the court's *Interim Order Directing (DiBruno Sr. and DiBruno Jr.) To Produce Documents Prior To Hearing*. Nevertheless, the Court will provide DiBruno, Jr. with one final opportunity to comply with this Court's Orders.

IT IS, THEREFORE ORDERED:

A. Dibruno, Jr. shall appear before this Court in District Courtroom #3, 401 West Trade Street, Charlotte, NC, at 10:00 o'clock a.m. on Friday, 16

December 2005 at which time the Court will review his compliance with the Orders of this Court and determine what further action to take concerning the $285,000, which is the amount Dr. Callaway states was transferred to DiBruno, Jr., and what action to take with respect to DiBruno, Jr.

B. DiBruno, Jr. shall by 10:00 o'clock a.m. on Thursday, 15 December 2005, deliver to the offices of the Trustee (at 301 South York Street, Gastonia, NC 28052) and his co-counsel Joseph W. Grier, III (101 North Tryon Street, Suite 1240, Charlotte, NC 28246) an organized, legible, full, complete and detailed accounting and disclosure of the source, any disbursements and the present location of the $255,000 (or $285,000 as Dr. Callaway states), including but limited to the following information and documents:

a. Full identification of the accounts from which the $285,000 was transferred to DiBruno Jr., including the full name and address of each account holder, the names and addresses of the banks or orther insititutions at which the accounts were maintained, the numbers or other identification of the accounts, copies of all statements for the years 2001 through the current date from all such accounts from which any portion of the $285,000 was transferred, and copies of both sides of all checks or other instruments by which the $285,000 was transferred to DiBruno, Jr.

b. Full identification of the sources from which Dr. Callaway obtained the $285,000, including all documentation and an written explanation of each source, including the full names and addresses of the sources and all documents (for example -- contracts, investment statements, notes showing loans) evidencing why and when those sources provided the funds to Dr. Callaway.

c. In other words, in sub-paragraphs "a" and "b" above, this Court wants a full and complete explanation with accompanying documents to explain and demonstrate exactly where, why and when Dr. Callaway got the $285,000, what accounts contained the $285,000, and exactly how, why and when the $285,000 was transferred to DiBruno, Jr. In every step full source and transfer documentation shall be provided.

d. Full explanation of exactly what DiBruno, Jr. did with the $285,000 - Dibruno, Jr. shall provide a complete and detailed written explanation and also copies of every document evidencing: (i) the amounts of any transfers he made, (ii) why he made each transfer (for example notes, contracts, invocies), (iii) the exact dates he made the transfers, (iv) how he made each transfer, full disclosure of the identity of any account into DiBruno, Jr. deposited any of the funds, (v) full explanation of the reasons why he converted the funds to the bank official checks discovered by the Trustee, (vi) exactly where and from whom he obtained each bank official check, and (vii) the exact present location of the $285,000 (names of the party or parties holding the funds, identifiaction of the accounts and locations of where the funds are held).

e. DiBruno, Jr. has stated he returned $90,000 of the funds to Callaway. DiBrunok Jr shall provide a full written explanation of why the money was transferred back to Dr. Callaway and copies of all documents evidencing and explaining

the transfer of the $90,000 back to Callway.

      f.     DiBruno, Jr. states he loaned $53,500 to family members for living expenses. DiBruno, Jr. shall provide an exact schedule of the names and addresses of each such family member, the amount transferred, the date transferred, how the money was transferred and a copy of each note for each loan to each family member, and the balance due under each note. If any note was paid furnish a copy of the cancelled note and copies of both sides of the cancelled checks used by the family members to repay any loan. DiBruno shall obtain from each family member copies of the bank statements for 2005 for all accounts into which the family member deposited any of the money, and an exact schedule of any disursements made of the money by the family members with copies of both sides of their cancelled checks. DiBruno shall also obtain from each family member a detailed schedule showing how they disbursed their portion of the $53,500, with details of each disbursement as to which the aggregate value transferred to any one source totaled more than $600.

      g.     DiBruno, Jr. states he paid $16,500 in legal fees and expenses. DiBruno, Jr. shall provide copies of the statements from attorneys and copies of the both sides of the checks used to transfer the funds and copies of receipts.

      h.     DiBlruno, Jr. states he loaned $30,000 to Dr. Bruce Wallace. DiBruno, Jr. shall provide a copy of the note from Wallace, a copy of the 2005 bank statements through the current date for the account into which the $30,000 was deposited by Wallace, a copy of both sides of the check used by DiBruno, Jr. to transfer the $30,000 to Wallace and a written statement of the balance due. If Wallace has repaid any or all the debt, DiBruno, Jr. shall provide a full explanation of the repayment, including copies of both sides of checks used by Wallace to make the repayments and a full description of what DiBruno, Jr. did with any funds repaid by Wallace, including full documentation.

      i.     DiBruno, Jr. states he transferred $30,000 to Cecil Minges. DiBruno, Jr. shall provide copies of all documentation concerning the "currency trading investment for Callaway", a copy of both sides of the check used to transfer the funds to Minges and copies of all statements for 2005 through the current date for the account into which Minges deposited the $30,000, a copy of both sides of the check used by Minges if he transferred the $30,000 to a third party, and copies of all communications regarding the currency trading investment, including all communications from Lee Lowther and/or International Monetary Exchange.

      j.     DiBruno Jr. states he transferred $35,000 "for an interest in an Apollo 11 flight manual for Callaway." DiBruno, Jr. shall provide copies of both sides of the check used to transfer the $35,000, the name and address of the party to whom he made the transfer, the present location of the flight manual, the name and address of the party with possession of the flight manual, a copy of the bill of sale for the flight manual, a copy of all advertisements or other documents concerning the sale of the flight manual, and a copy of any receipt for all or part of the $35,000.

      k.     Copies of all notes evidencing any loans owed by DiBruno, Jr. to Bruce Wallace or Clifford Callaway, with statements by Wallace or Callaway of any balances due under the notes, copies of both sides of the checks used by Wallace or

Callaway to make the loans.

        l.    Copies of all bank statements of DiBruno, Jr. for all accounts on which he was a signatory at any time in the years 2004 and 2005.

        m.    In other words, in sub-paragraphs "d" through "l" above, this Court wants a full and complete explanation with accompanying documents to explain and demonstrate exactly where, why and when DiBruno, Jr. got the $285,000, what accounts of DiBruno, Jr. and any other party contained the $285,000, and exactly how, why and when the $285,000 was transferred by DiBruno, Jr. and what he continues to retain. In every step full source and transfer documentation shall be provided.

SO ORDERED, this 23d day of November, 2005.

_Graham C. Mullen_
Graham C. Mullen
Chief United States District Judge